

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-691

|  |  |
|---|---|
| | **Opinion Delivered**  May 10, 2017 |
| QIANA ALLMON-LIPSCOMB<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISION [NO. 60PR-95-376] |
| V. | HONORABLE MARY SPENCER MCGOWAN, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant Qiana Allmon-Lipscomb appeals from an order entered by the Pulaski County Circuit Court revoking her order of conditional release, claiming there was insufficient evidence that she violated the conditions of her release. We affirm.

On February 9, 1995, Lipscomb (sixteen years old at the time) was acquitted by reason of mental disease or defect of the offenses of aggravated assault, terroristic threatening, and endangering the welfare of a minor.[1] She was committed to the custody of the director of the Arkansas Department of Human Services (DHS) for evaluation and treatment. Over the course of the next seventeen years, Lipscomb was conditionally released from treatment and had her release revoked five times.

---

[1]The record reveals that Lipscomb was charged with these offenses after she "stuffed her infant baby into a garbage can."

On September 5, 2012, the circuit court entered its most recent order granting Lipscomb a conditional release. The order stated that Lipscomb's primary diagnosis is "Personality Disorder, Cluster B Type (including Borderline, Histrionic, Narcissistic and Antisocial traits)." Some of the conditions of her release included that she comply in all aspects with recommended medical, psychiatric, or psychological treatment and therapy; take all medications currently prescribed; remain at her approved residence and not leave without prior authorization from her treatment team; and submit to one-to-one supervision, twenty-four hours per day. The order of conditional release was modified on September 19, 2014, to change her treatment team. All other conditions of her release remained the same. The order was modified a second time on August 31, 2015, due to Lipscomb's lack of compliance. The August 31 order provided that she was to comply in all respects with recommended treatment and therapy, comply with curfew requirements, and submit to twenty-four-hour-per-day nursing supervision. Regarding the nursing supervision, the order stated that "[Lipscomb] and her [one-to-one nursing] staff shall treat each other with dignity and respect at all times."

On December 4, 2015, the State filed a motion for revocation of conditional release, alleging that Lipscomb was not in compliance. The motion attached a report of Sonya Davis, a certified nursing assistant employed by Arkansas Healthcare Personnel (AHP), who was assigned one-to-one nursing supervision of Lipscomb. Davis's report details an incident on November 17, 2015, when Lipscomb became upset; yelled and cursed at her (Lipscomb's) boyfriend, her four-year-old daughter, and Davis; and threatened to kill Davis and the boyfriend with a butcher knife. According to Davis, Lipscomb's boyfriend tackled Lipscomb, causing her to drop the knife. Davis said Lipscomb "ran back up on me[,] chest to chest[,]

pointing in my face saying she was going to kick my ass." Davis reported that Lipscomb said that she was not scared to go back to the state hospital, that she had killed somebody before and all they did was lock her up in the hospital, and that she would do it again. Davis's report also stated that Lipscomb pushed her daughter to the ground during the incident.

On March 3, 2016, the circuit court held a hearing regarding the State's motion to revoke Lipscomb's conditional release, and on April 11, 2016, the court issued a five-page order granting the motion. The circuit court detailed the history of this case, including Lipscomb's criminal history,[2] and summarized the hearing testimony. The court then found:

> In this case, based on the testimony presented, the Court finds that Qiana Allmon[-Lipscomb] threatened Sonia Davis with a knife, verbally threatened to assault Ms. Davis, assaulted her own four[-]year[-]old child, and threatened to assault another patient at the Arkansas State Hospital. All of these actions are violations of the conditional release order.

This appeal followed.

We review proceedings regarding the conditional release and revocation of an acquittee by mental disease or defect de novo, but the decision of the court will not be disturbed unless clearly erroneous. *M.E. v. State*, 2010 Ark. App. 394, at 3–4. In making our review, we give due regard to the superior position and opportunity of the court to determine the credibility of the witnesses. *Id.* at 4. A finding is clearly erroneous when, although there is evidence to support

---

[2]The circuit court's order provided that on May 8, 1998, Lipscomb was sentenced to serve twenty years in the Arkansas Department of Correction (ADC) for murdering her boyfriend. She was paroled on May 7, 2003, and returned to prison on August 6, 2004, on a parole violation. She was found guilty of battery in the second degree for assaulting nurses at the Arkansas State Hospital in June 2008. On January 28, 2009, she was sentenced to thirty months in the ADC.

it, the appellate court after reviewing the entire evidence is left with the definite and firm

conviction that a mistake has been committed. *Id.*

The governing statute provides that

[a]fter notice to the conditionally released person and a hearing, the court may determine that the conditionally released person has violated a condition of release or that for the safety of the conditionally released person or for the safety of the person or property of another person the conditional release should be modified, extended for a period specified by the court not to exceed five (5) years, or revoked.

Ark. Code Ann. § 5-2-316(b)(1) (Supp. 2015). On appeal, Lipscomb concedes that the State

proved at the hearing that she threatened Davis with a knife and threatened to beat Davis.[3]

However, Lipscomb argues that this conduct cannot serve as the basis for the revocation of

her conditional release from the state mental hospital because there was no condition in her

conditional-release orders that she engage in "good" or "law-abiding" behavior. Lipscomb

contends that the August 31, 2015 order that required her to at all times treat her one-to-one

nurse with dignity and respect "cannot be treated as the equivalent of a specific, narrowly

focused requirement conditioning [her] release on refraining from threatening violence against

her [one-to-one] nurse." She argues that she "cannot be guilty of violating a requirement of

her conditional release that did not exist." We disagree.

The August 31, 2015 modified order of conditional release required Lipscomb to treat

her one-to-one nursing staff "with dignity and respect at all times." It is undisputed that Davis

was a member of Lipscomb's one-to-one staff, and Lipscomb concedes that the State proved

---

[3]The State presented evidence from Davis that on November 17, 2015, Lipscomb threatened to kill her boyfriend and Davis with a knife and threatened to beat Davis. Davis also testified that Lipscomb cursed at her daughter and pushed her daughter to the ground. Teresa Bunch, a DHS investigator, testified that on November 19, 2015, Lipscomb's daughter reported that her mom had pushed her down and "pulled" a knife on Davis.

SLIP OPINION

that she had threatened to kill and beat Davis. Under these facts, we hold that the circuit court did not clearly err in finding that Lipscomb violated this condition of her release. We affirm.

We also point out that Lipscomb's release was also conditioned upon her taking her medication as prescribed and complying with treatment and therapy recommendations. There is a substantial amount of evidence to support the circuit court's finding that Lipscomb violated these conditions of her release.

Dr. Leslie Smith, one of Lipscomb's treating psychiatrists and the medical director of the treatment program in which she was enrolled while on release, testified that Lipscomb suffered from bipolar disorder. He stated that she had been demonstrating manic and oppositional behavior and had expressed a desire to discontinue her medications, which he advised against. Dr. Smith noted that Lipscomb's behavior with the nursing staff was escalating. He stated that Lipscomb had been exhibiting signs of grandiosity, claiming that she had been "talking to the Governor, that she was over the judge that was ruling on the case, that she didn't have to abide by any of the regulations or requirements[.]" Dr. Smith also said that Lipscomb was demonstrating the inability to care for her basic medical needs; her uncontrolled diabetes resulted in a large ulcer that required a ten-day hospitalization. Dr. Smith opined that his program was no longer an appropriate place for Lipscomb's treatment due to her escalating behavior and her noncompliance. Dr. Smith testified that Lipscomb needed to be in a more structured environment and that the one-to-one staff in the unstructured environment was insufficient. According to Dr. Smith, Lipscomb needed the structure of a residential facility.

Vernita Melvin, another certified nursing assistant employed by AHP who provided one-to-one supervision of Lipscomb, testified that on November 18, 2015, Lipscomb was agitated, refused to take her medication, and kept attempting to leave her house. Melvin called for assistance, and Lipscomb was taken to the state hospital.

Angeline Miller, co-owner of AHP, testified that her company contracted to provide the one-to-one nursing supervision of Lipscomb. Miller stated that because of the November 17 and 18 incidents and her concern for the safety of her nurses, her company was no longer willing to continue monitoring Lipscomb.

Linda Hopkins, a registered nurse employed at the state hospital, testified that on December 18, 2015, Lipscomb became upset after she received a call informing her that her daughter had been removed from Lipscomb's custody. Hopkins testified that Lipscomb began crying loudly and was disrupting the unit. Hopkins called the doctor on duty, who prescribed Benadryl to calm Lipscomb, but she refused to take it. When another patient began taunting Lipscomb's loud crying, she chased him. It took four hospital employees to prevent her from entering the other patient's room. Lipscomb demanded to talk to the doctor or a social worker and threatened to "tear the place up" if they did not talk to her. Hopkins called the doctor back, and he instructed her to give Lipscomb Haldol, Ativan, and Benadryl, and if she refused, to use a physical hold. Lipscomb eventually complied and took the medicine.

Another registered nurse employed at the state hospital, Addie Hart, testified that on February 23, 2016, she advised Lipscomb that she had used her allotted phone time. Lipscomb became upset, yelled, and cursed at Hart and others. Hart testified that she felt threatened by Lipscomb.

SLIP OPINION

Dr. Stephen Brasseux, staff psychiatrist at the state hospital, testified that he had been treating Lipscomb and that she suffered from borderline-personality disorder, antisocial-personality disorder, hypertension, diabetes mellitus, and hypercholesterolemia. Dr. Brasseux stated that his preferred treatment for borderline-personality disorder is intensive outpatient therapy that takes about one to two years. However, he stated that Lipscomb posed a risk of harm to others in her current state and that the state hospital was the least restrictive or appropriate setting to ensure the safety of others. He further testified that Lipscomb had a history of violence and that she posed a moderate risk for future violence.

This evidence demonstrates that Lipscomb was noncompliant with taking her medication and that she was verbally hostile to multiple individuals assisting with her treatment. Based on this evidence and evidence that Lipscomb threatened to beat and kill her nurse, we cannot say that the circuit court clearly erred in revoking Lipscomb's order of conditional release. Accordingly, we affirm.

Affirmed.

GRUBER, C.J., and GLADWIN, J., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Pub. Def., for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.